Good morning your honors and excuse me may it please the court. Harini Raghupati with the federal defenders on behalf of Mr. Zendejas. This is a case where the jury had to choose between Mr. Zendejas's competing post arrest statements. On the one hand he said the movies to borrow his car and that he believes she may have been responsible for putting drugs in a spare tire without his knowledge. On the other hand he later said that he agreed to smuggle drugs for a person known only as El Gordo. The government knew that these statements were shaky. They were unrecorded. They were contradictory. The case agent falsely reported that the excuse me there was a lack of a recording and Mr. Zendejas's incriminating statement were sparse at best. To compensate for these shaky statements the government chose to put on testimony and to argue at closing that the presence of a GPS tracker meant that Mr. Zendejas was guilty. All the while the government refused to turn over discovery about trackers that would have allowed Mr. Zendejas to challenge the testimony that came out at trial in the prosecutor's closing argument. And this was improper from start to finish. I thought the whole theory of the defense was that because there was a GPS tracker that showed that he was an unknowing track an unknowing mule which is the phrase for someone who smuggles drugs into the country. And so it seems to me that that helps you rather than hurts you since there's no question that he brought the drugs into the country. So a number of your arguments I'm not sure I quite understand since the whole theory of the defense the extent that there was a theory was that he was an unknowing importer. And that he was unknowing the proof of that was that they the people hired him put in a GPS so that they could be sure about what where he was with the with the what he was smuggling. Yes, your honor. I think we need to separate the discussion that happened during the eliminate proceedings and then the evidence that came out in trial. So during the eliminate proceedings, the defense indicated that they wanted to be able to discuss the presence of a tracker to show Mr. Zendejas wasn't an unknowing courier like your honor suggested. And the district court said, if you're gonna put on that testimony, then we're gonna allow the government to come back and say that we see these trackers a lot. But then we have to look at what trial, which actually was what does that prove that they see these these GPS trackers a lot? It didn't seem to me to prove anything because of her whole purpose of the trackers was was was so that they wouldn't have to. They could use an unknowing, uh, importer. I the reason the tracker was important to the government's case and the reason that it brought it out on direct examination in its case in chief is because the prosecutor then argued that tracking drugs was part and parcel not of an unknowing courier, but of a knowing courier. And that's on page 3 51 of the record where the prosecutor makes the closing argument, saying that the presence of a tracker is not only what happened in this case, but it's 100% consistent with how you would expect dope to move across the country. And this is in the context of the prosecutor making a broader argument why it doesn't make sense to use an unknowing courier that you, in fact, use knowing couriers. And even with knowing couriers, you put a tracker into the drug loads that you can trust, but verify was the prosecutor's argument. So the prosecutor took something that they were claiming in lemonade was unremarkable, and they actually use it as a hallmark of guilt in this case. Mr Zendejas was guilty because we know that knowing couriers have trackers that are put into this bear into their cars, and he and that's how you expect dope to move across the country. And consistent with that pattern, he had a tracker that was put into the spare tire of his car. That's the reason you should find he's actually not an unknowing courier. But in the defense opening statement, the defense counsel said, hidden with the drugs was a GPS tracker that would tell the drug smugglers exactly where the car was and exactly where the tire was, regardless of what Mr Zen. Then they just Zen Jagus knew. And then in your summation, you said the GPS eliminates the risk of using an unknown courier. You know where they're going. You know where they are. It's the perfect thing to use if you're going to use an unknowing courier. So that's your whole theory. Well, Your Honor, I think there was that statement made an opening, but, of course, opening our evidence and closing and closing it in the argument before before trial. Right, Your Honor. But I think the case was clear that when we're talking about profile evidence that generally it's not allowed in a trial, and there's limited exceptions. One is the door. But here, the defendant didn't open the door because the government elicited this testimony in its case in chief on its direct examination. It didn't listen to testimony that that GPS trackers were used. They were used a lot. I'm sorry. I didn't hear your honors. They were. They elicited from from D. A. Agents, I believe, was GPS trackers were used and that they were used often. Lately, they were started to be used even more often. But I don't I mean, he was a drug trafficker. I mean, he did. He did bring the drugs in. So the only issue was whether he was knowing or unknowing. I don't know what the profile evidence is that you're precisely talking about. Well, the reason that the government elicited the testimony that GPS trackers are common was that it could then make the argument again on page 3 51 of its closing argument. And this was in its initial closing argument. It wasn't rebutting the defense closing argument. This was its first closing argument. The trust, but verify, pay them, track it, ensure your market. That's what happened in this case. That's 100% consistent with how you expect dope to move across the United the common sense argument based on the evidence. No, Your Honor, I think arguing that the presence of a tracker is 100% consistent with how you would expect dope to move across the United States is profile evidence. It's saying that there's this characteristic a tracker and that's typical of people who are unlawfully bringing drugs into the United States. Because Mr Zendaya has fit that profile, you should find him guilty for that reason. Um, and I think the problem with this testimony was that the district court and the government refused to turn over the basis of agent agent for grosses testimony about the trackers testified on pages 1 64 and 1 65 that he had seen an uptick in GPS trackers. And the basis of his testimony was hearsay. It was these bullets that he received daily as the chief of staff of a narcotics joint task force. It wasn't based on recipient observations. And, um, the government continues to claim on appeal that our claims for the first time on appeal rather that it didn't have access to information about how often GPS trackers are used by unknowing couriers. Yet we know from agent tour grosses testimony that he had access to these bullets, and so there's no explanation from the government as to why it simply couldn't burned over those bullets. I thought I thought the evidence you wanted was information and possession of the government in which people were found with GPS drug traffic GPS monitors who were later determined to have had no knowledge of what they were carrying. That government's response was that they don't keep such records. The government response. I believe that the primary response below from the government was that it would be very laborious, not that they don't have the records, but that they have the cases. But that would be laborious. They go out and have to compile that list. What? What? What? What gives you the right to demand that the government make lists as opposed to I mean, there's rule 16, which, as I read it requires that they had a list. They should have given it to you, but they have. They said they had no list of the kind that I just described. And so what you would be so I think I think this again goes to the fact that the government elicited testimony about the prevalence of trackers at trial in its case in chief that used it offensively as a sword, not as a shield, and then at the same time to deny the defense the access to these bullets, even if they had turned over the bullets themselves and said, Look, these are the bullets you go through and figure out whether any of these correspond to unknowing couriers. I mean, through the onus on the defendant, I mean, they essentially used evidence but didn't give Mr Zendaya has the information that he needed to challenge the basis of that of that testimony about the problem. No, there's no indication that the so called bullets have what you wanted, which was that that there were people who you who were found drugs with G s trackers who were and the cases were subsequently dismissed because the government concluded that there was no knowledge on the part of the of the importer. I don't think we can make that determination, Your Honor, because all that the government did below was to ask a single case agent if she was personally aware of any cases, and she wasn't. And so I don't think there's there's a basis in the record to determine that the information we were seeking about the correlation between unknowing couriers and GPS trackers didn't exist. Counsel Counsel in discussing this thing about discovery, isn't it? Isn't it? I'm just trying to make sure I understand the record in your first request for some discovery of this type. It seemed to me that court said, No, I'm not gonna give it to you unless somebody files a set up. And then it seems to me nobody filed the declaration. Is that true? It's partly true, Your Honor. So that was actually, I believe, the second hearing on the discovery issue. The first hearing, which is at pages 65 to 73 of the record, the court said, I think this may be material. I think this is information that you have to give over. And that's well, I understand what happened to begin with. I'm just trying to set it up here. It seems to me that the court finally got to the point, even saying it might be material or is material. I don't know. Then the court said, I don't think it is. So you file me a declaration saying you're set up and I'll look more into it. Isn't that what happened? And then nobody filed the declaration? That's that is while the district court said there's no materiality unless you are forced to submit a declaration. That is correct. That was up in the second, the second hearing. And there was no declaration that was that was filed. But I think that goes to one of the issues that we raised in the brief, which was that requiring Mr. Zendayas to file a declaration essentially pitted two of his constitutional rights together. I see that I have two and a half minutes or so. I would like to reserve the remainder of my time if I may. All right. Thank you, counsel. Thank you. You're from the government. How? You're muted, Mr. Howe. Yeah, there's no reason to go on. You're reading your notes instead of looking at us. We can't hear you. Okay, there. Sorry. I was waiting. May it please the court. Zach Howe on behalf of the United States. I'll begin where my friend on the other side began, which is with the lay testimony on trackers. The court did not abuse its discretion in admitting that testimony for three reasons. First, testimony merely conveyed everyday reasoning based on the agent's personal experience. The second is that if that testimony was expert testimony, the agents were playing with all of it. So any error was harmless. And the third is that the evidence here, including Zendayas' confession, was overwhelming. So again, any error was harmless. I'll begin with Officer Tori Gross's testimony. Well, I don't think that counsels really argued that too much. I think they got more into why didn't they get the documents given where you were going? Certainly, I'm happy to address that. And I think there are three reasons that the court got that right as well. Number one is that the government did not possess the information that Zendayas was seeking. Number two is that the  government did not possess the information that Zendayas was seeking.   confidentiality of the testimony. Number four is that the government did not possess the confidentiality of the testimony. And number three is, again, the overwhelming evidence shows that any error in failing to disclose testimony tracker, excuse me, tracker discovery unrelated to this case was harmless. So I'll begin with possession. The government explained at pages 87 through 89 of the record that it had asked the case agent about any dismissals that resulted from trackers. The case agent was not aware of any case like that. The case agent as well as the supervisor and the prosecutor also confirmed that there is no record kept, no memo or anything like that kept of GPS trackers in drug seizure cases. And the reason is because, as the prosecutor said, it's not a big deal. They see trackers in most of their drug cases and so they have no reason to produce the discovery that Zendayas was seeking. The prosecutor and all of the agents and other prosecutors would essentially have had to comb through all of their files and look for some sort of reference to a tracker in an ROI or a property seizure form and then jot that down, jot down the disposition of the case, compile all of that information, and then put that information out in the discovery. Let me ask you a question about that. Did the defendant ever produce to the district court any evidence that the government was in possession of the information they wanted? No, there was never an attempt to make a showing like that. The only evidence we have on that point is that discussion where the prosecutor confirms that neither he nor a supervisor nor the case agent had any database of those sorts of cases. And so the district court trying to put up some kind of evidence that would get to that, as I understood it, said to the defendant, why don't you file a declaration saying you were set up? That would give some indication that the district court would have to do something to cause the government to do more. Would that be the reason? I think that's correct, your owner, and Zendejas takes issue with that requirement of a declaration, but I think it's important to note that before the court said it wanted the declaration, it gave Zendejas numerous chances both orally and in writing to establish the materiality of this evidence. You can see this at pages 39 and 40 of the record, 46 and 47, 54 and 55, 85 and 86. So Zendejas has numerous chances to establish materiality and only after that does the court say at page 93 there's not been a showing of materiality and therefore I want the declaration to sort of sharpen the issue, as the court says. So there was no valuable evidence. Which the defendant accurately says could violate the rights to make them talk. I think that would be accurate, your honor, if Zendejas had established a right to the discovery. So in other words, if this information was material and yet the court was still saying I need you to file this declaration before I give it to you, then I would agree there would be a real problem in conditioning Rule 16 discovery on Fifth Amendment rights. But that's not what happened here. The court has already said you have no right to this discovery because there is no materiality to this discovery and so therefore there's no constitutional right conditioned on a valuable government benefit. It's simply a sort of extra option for the defendants to establish materiality after he's failed to do it in all of those record citations I've just given you. And under those conditions there's no Fifth Amendment problem. And then I also want to note the points, I think I've mentioned that the government didn't possess this information, but there also really was no, if you actually drill down into the discussions of this issue, there was no showing of materiality that was non-speculative. Zendejas never identified how this was going to bolster a defense, how it would alter a defense, how it would the discovery of evidence that would be admissible at trial. So there was really no theory as to what this was going to do for Zendejas. And as a result, the court was on firm footing in saying that this was a purely speculative theory that, you know, hey I've been potentially set up and therefore I should get essentially any discovery I want. So I think the court, I think the court did not abuse its discretion both because this information didn't work and because the showing of materiality was highly speculative. And then final, I think any error was harmless here because to pass a full confession and specifically about fractures and other unrelated pieces would certainly not have caused the jury to So if there are no questions on that, then I'm happy to circle back and talk about the lay testimony a bit more or I can address the other issues in the case. But if there were no other questions, then I would happy, I'd be happy to sit down on the briefs as well and I'd ask the court for them. It appears there are no additional questions. Rebuttal? Yes, Your Honor. So I have three points I'd like to make. The first is regarding the materiality of the tracker discovery. The, I think Mr. Howe is incorrect in saying that it's immaterial and I think the district court recognized that testimony, or excuse me, evidence about trackers would be material. Again, on pages 69 and 70 at the first hearing the district court was willing to have the government make this and even at the second hearing, which is 85 and 94, the district court continued to think that this testimony was material and it's material under speaker, which is I think a case, the reason why it's material is because there was undisputed that there was a tracker that was found in the spare tire. It was undisputed that Mr. Zendejas denied knowledge initially. Now the government wants to claim that it was a slam dunk confession, but I think that's contradictory to the record where it was, what really was a confession was actually contradictory statement that Mr. Zendejas said. So there was some evidence to support that Mr. Zendejas was an unknowing courier and that his friend Norma borrowed his car. There was certainly evidence to show that there was a GPS tracker secreted in the car. And so it's clearly material, this test, this evidence about the correlation between unknowing couriers and GPS trackers. And the district court understood the materiality, which is why the district court was inclined to have the government conduct this search. And it was only because the government continued to object that this was, you know, the district court said it would be a five minute task. You send an email for five minute tasks and the government continued to object that this would somehow be too laborious to have to compile this list. And then the district court changed its tune and said, well, fine, I'm not going to have you undertake this task unless the defendant submits a declaration. And I think there was a contingency that the district court was placing on Mr. Zendejas' Fifth Amendment rights. If we look at page 92, the district court says, I'm prepared to have him at least canvas the agents that are laboring in the same vineyard as the case agent, but not unless I get some declaration from the defendant. And he says later, if he wants to tell me that in a declaration, then I'll find some materiality. So the district court repeatedly talked in contingencies that materiality was predicated upon Mr. Zendejas submitting a declaration, which treaded on his Fifth Amendment rights. I'm not sure that it treaded on his Fifth Amendment rights. First, you could have altered to submit it in canvas. And that often happens. And second, in a case called Simmons against the United States, which involved a testimony to establish standing in a search and seizure case, the Supreme Court in effect held that they could not use testimony or an affidavit that was submitted to be used to incriminate him. But in any event, you could have offered to submit this affidavit in camera. That is, I mean, perhaps we could, Your Honor. But I think the affidavit was unnecessary to begin with, because we have Mr. Zendejas' post arrest statements. If the judge wants testimony from Mr. Zendejas, we have the statement that he made about how he was set up by his friend Norma. And so I was set up by his friend Norma. And subsequently, he changed that to indicate that he was paid, he was going to be paid for smuggling these drugs into the United States. So I'm not sure that that that precisely does it. You know, there, by the way, there is this Ninth Circuit case called United States versus Seppel Veda at 645, 1066, which discusses the fact that the defense and government expert testified that such cases of the kind you're talking about were rare and atypical. I'm not familiar, Your Honor, with Seppel Veda. I don't believe it was in the briefs, and I'm happy to submit a 28-J. No, the case didn't turn on that. It just sort of, in reading it, I just noticed that it was there. I see that I'm out of time. Yeah, you've exceeded your time, so if you could just sum up, Counsel. Certainly, Your Honor. The last point I would make is that this case wasn't a slam dunk. It wasn't overwhelming evidence. And I think we see that from the fact that the government couldn't rely just on the confession, that it went to pains to elicit testimony about the tracker to show that Mr. Zendejas was a knowing courier. So we would ask that you please vacate Mr. Zendejas' conviction. Thank you. All right. Thank you, Counsel. Thank you to both Counsel for your argument. The case thus argued is submitted for division by the Court that completes our calendar for today and for the week. We are adjourned. This Court for this session stands adjourned.
judges: Rawlinson, N.R. Smith, Korman